Our first case for argument today is Lexington Insurance Company and others against RLI Insurance, 1914-26. We'll hear first from counsel for Lexington. It pleases the court. Good morning, Your Honors. Good morning, counsel. My name is Mark Subchak. I'm here on behalf of Appalachian Lexington Insurance Company and National Union Fire Insurance Company of Pittsburgh, Pennsylvania. Lexington and National Union, by way of this appeal, seek reversal of summary judgment entered in favor of Appalachian RLI Insurance Company. Mr. Subchak, can I just confirm one thing, please, before you get into your substance? You are not disputing here that Illinois law applies, are you? No, we're not. I know there was an issue below. There was an issue below. The choice of law issue is not dispositive. The law is dispositive. Okay, but you don't dispute that it's Illinois? No, I do not. All right. Thank you. By way of their appeal, Appalachians respectfully seek reversal of the summary judgment entered in favor of RLI. And this case presents a single issue of insurance policy interpretation. And the issue boils down to whether or not payments that Lexington and National Union's mutual insured RLI, a company called New Prime, a trucking company, whether payments they make in satisfaction of their aggregate court or deductible, which I'll refer to as the ACD, reduce the indemnity limits of the RLI policy. Lexington and National Union's position is that they do not. RLI's position is they do. The district court agreed with RLI. I'd like to make three points in support of Lexington and National Union's position. And the first point is that the labels that parties place on contractual provisions don't control. It's what's in the actual text that controls. And it is the way the ACD operates in the context of the RLI policy. Even though it's called a deductible, it's not. It is a self-insured retention. It acts everything like a self-insured retention. Do you agree that if it is a deductible, then it would decrease the limits? If we determine, putting aside labels, but if we determine substantively that it is a deductible, that it would then reduce the limit? Under the case law, a deductible typically reduces the limits of indemnity coverage, while a self-insured retention does not. That's correct. That sounded like a yes. Yes. Thank you. Can I just ask you a follow-up question? Certainly. This background or context will help. Yeah, of course. In your brief on page 21, you don't need to look at it. I can tell you. You make the statement, absent policy language to the contrary, deductibles erode policy limits. Correct. While self-insurance retentions do not. Correct. Is that a background, custom, understanding, industry-accepted practice in your field? In other words, it seems like what you're arguing is, or what you're pointing out is, look, everyone understands in the insurance industry that deductibles erode policy limits, even though a policy may not say that. It's just everyone in the world knows that. And so the way deductibles work are kind of an implied term, in other words, in all insurance contracts. Well, it— Forget what's written here. Is that kind of the way the world works? The way the insurance industry works is there's an exception to every rule. And I think that generally speaking— So this is a deductible that is not a deductible. Is that the idea? This is, regardless of the label deductible, a self-insured retention because it bears every single characteristic of a self-insured retention recognized by the case. But what I'm trying to figure out is what you both seem to be saying is that everyone that has an insurance policy and that writes insurance policies, they know what a deductible is. And it doesn't have to be written down in a policy. That just seems counterintuitive to me because I kind of think, geez, really insurance companies really don't leave anything to chance. They write it all down. Well, and that goes to the issue here, which is, I mean, this is not— this is a somewhat sophisticated insurance product. I mean, I believe your honors have seen enough insurance cases to realize that it's somewhat of an unusual situation to have an aggregate corridor deductible. They're not uncommon, but they're also not typical. And given that, you know, the RLI policy is completely silent, and that's actually one of the challenges in this case, is that there's some case law on this. It doesn't come up that often. But typically the policies in those cases will specify payments do or do not reduce the limits of insurance, and the RLI policy does not specify that. It operates everything like a self-insured retention, and self-insured retentions do not reduce policy limits. And the reasons are, in a policy with a deductible, I mean, the insurer is responsible for the claim, basically from dollar one. The insurer investigates it. The insurer defends it if suits filed, meaning it hires defense counsel, it pays defense counsel, it controls defense strategy. When settlement time comes, if settlement time comes, the insurer would pay the claimant and seek reimbursement from the insured. But if you look at the RLI policy, specifically in the ACD endorsement and the payment of cost provision as well, and in conjunction, all of these responsibilities are the insured's until the ACD is satisfied. The insured handles all claims until that $2.5 million per policy period amount is satisfied. The insured hires, defends, chooses defense strategy, pays for its lawyers. But isn't that just a reflection here of what they agreed to contract about? Isn't that just a reflection that they wanted this to be different and they wanted the responsibility on the insured? Certainly, and that is indicative of a self-insured retention. That's how self-insured retentions work. If this were only a deductible, or if a policy only had a deductible and no self-insured retention, could the parties agree to that same shift and have the insured responsible? I would argue in that circumstance that regardless of any label, it wouldn't actually be a deductible. So even if they, what if they said it's a deductible and it erodes the policy limits? Could they? I would say it's a self-insured retention that erodes the policy limits. Okay. Specifically, in other words, there would be, that's a situation where you would have language contrary to the typical understanding of how a self-insured retention works. It's your position that if, that how this works, so who bears the responsibility is what we should look at and determine if it's. . . Not the label. No. That's correct, Your Honor. So in fact, you wanted to tell us about three issues, three reasons. What are the other two? And then I've got some questions for you. Okay. Well, the other two are principally the manner in which the district court analyzed this policy. And I'm specifically referring to, there are two portions, two different spots in the RLI policy that contemplate that RLI, or I'm sorry, that new prime can satisfy this $2.5 million ACD by paying one claim. Okay. That's in the payment of cost provision, but more importantly, it's in the aggregate court or deductible endorsement itself. Under the district court's analysis and RLI's reading, that is an impossibility. That cannot happen because according to RLI and the district court, the most that new prime could ever pay on one claim is $2 million. Right. Okay. That's the third reason? The third reason is that I believe the district court erred with respect to how it interpreted the term aggregate and then how it interpreted the defense endorsement. Okay. We've got a fair amount of evidence in the record concerning the negotiations that led up to both the RLI policy and the Lexington and National Union policies. Is there any evidence from before this policy was issued indicating that your clients thought that the Lexington coverage would kick in only at a total of $7.5 million in liability on the first claim? They have cited principally to the schedule of underlying insurance in the National Union policy. Sorry, which shows what? They're arguing that Lexington and actually National Union understood that it would kick in at $7 million. At five. Well, actually it would be the $3 million self-insured retention. They've never actually argued with respect to how Lexington, they've argued it about the National Union policy which says excess of the Lexington policy. Okay. Let me try it again. Okay. Certainly. Is there any evidence from before this policy was issued that your clients, either one of them, thought that this aggregate corridor deductible would not erode the policy? I don't have anything specifically from my clients saying that it would not. No, I do not. I didn't see anything either. I saw everything saying that Lexington is providing $5 million in coverage above $5 million in liability. Right? That's what it says repeatedly. It says that on the declarations page in the schedule of underlying insurance. That's a pretty good place to look, right? Well, there's a couple points I'd like to make about that. And the first is that, generally speaking, the declarations doesn't control the coverage under the policy. You have to look at the actual policy itself. So even if that's reflected on the declarations or the schedule of underlying insurance, that would not be dispositive. And there's actually the Klein case, the Klein v. Gulf Insurance case, Sixth Circuit. They've actually made a point where they were facing a similar issue as this. There is actually under the scheme that RLI and New Prime have, there is no fixed amount that would apply in all circumstances. It's not always going to be excess because of the ACD. There is a certain amount of underlying insurance, self-insurance for one claim, but then later it would be lower. It would be less. Right. But I don't see any indication anywhere here that your clients cared or had any interest in how New Prime and RLI between them got up to coverage or with anybody else got up to $5 million in payments on a claim. I have not. So if that's the case, and given the extrinsic evidence from the negotiations and the responses to these claims, which apart from Ms. Mertz's one misunderstanding apparently retracted within a couple of hours on April 24, 2015, even with your textual arguments and even if there's room for debate, we've got people saying, oh, this policy doesn't look as clear as we thought it was. Why shouldn't we just go with the extrinsic evidence and say you guys are getting exactly, you're being asked to do exactly what you agreed to do, which is cover liabilities above $5 million? Well, you've pointed to Ms. Mertz's statement, but that is not the only bit of evidence. First off, I'd like to just simply say that extrinsic evidence is obviously not admissible unless there is an ambiguity. We haven't argued there's an ambiguity. I'm sorry, RLI does not concede there's an ambiguity. No, you both think it's unambiguous. I understand that. That doesn't necessarily resolve that issue. I understand, Your Honor. But there is actually a statement from a gentleman named Scott Haight. Mr. Haight is an underwriter at RLI, and shortly before renewal of his policy, and I can give you the site. It is at – Do you have a date? It's mid-December. I believe it's shortly before. It is – this is document 3319, it's Exhibit S. It's a December 2014 email from Scott Haight to the broker, Cottingham & Butler, and in that he says he's transferring – he's informing them that the policy has been bound, and what he says is the policy number for the new prime policy with the $2 million AL, which is an aggregate limit, above a $3 million SIR and the $2.5 million corridor deductible. You can read that statement very easily as stating that the $2 million applies above a $3 million SIR and the $2,500 corridor deductible. And Haight is with RLI? Haight is with RLI, correct, Your Honor. Okay. And I think it's important to point out, getting back to my point regarding the payment of costs and the one or more claims language in the policy, that it's interesting what the district court did because the district – and what RLI has done here in their appellees' group, and that is there was no attempt to harmonize that language. The district court didn't really try to explain it much. It just brushed it off as boilerplate. And it also only addressed the language as it appears in the payment of cost provision. It didn't mention that it's also in the actual ACD endorsement, which somewhat undercuts RLI's argument in their appellees' brief that essentially the payment of cost provision is less important than other parts of the policy. And so, you know, Lexington and National Union's interpretation here is really the only one that gives effect to the RLI policy as a whole. The district court said that, well, it's impossible for them to pay the ACD on one claim because I've already concluded that the ACD is capped at $2 million. It's an odd way to structure the policy, though, isn't it? You know, I mean, I know that I totally understand your point about don't decide the case based upon a label. I understand that. But it would have been a lot easier to just say, look, the way the self-insurance retention is working here is it's kind of working in two layers, two tranches, two buckets. You know, you all come up with the right language for that, where, you know, you first got a $3 million amount and you got a $2.5 million amount that applies, you know, to a policy year. But it's not written that way, right? It's definitely written in terms of a deductible. I would argue that it's written exactly like a self-insured retention. I mean, they've called it an aggregate corridor deductible, but aside from that, it bears every hallmark of a self-insured retention. And insofar as it's an odd way to structure a policy, I can't say that it's particularly odd. Isn't it odd, though, that you use two different labels? If it's a self-insured retention, then why not call it an SIR in the policy when clearly they knew what an SIR was and they were calling the $3 million an SIR? Well, it's funny you raise that, Your Honor, because actually the definition of self-insured retention in the policy easily applies to both the ACD and the $3 million per occurrence. The RLI policy defines self-insured retention as amounts that the insured will pay that is not subject to reimbursement by the insurer. It seems odd that you wouldn't call it an SIR if you've defined SIR, that you would call it something else. Especially against a background presumption in the industry that the whole world knows what deductibles mean, that deductibles erode policy limits absent policy language to the contrary, and then the policy language that is to the contrary employs the word deductible. That's odd. But the deductible, again, Your Honor, it is a label, and you have to look at how the policy works as a whole. And as a whole, from Lexington and the National Union's point of view, it's quite clear that whatever the parties choose to call this, this is not a deductible at all. It's a self-insured retention. Want to save the rest of your time for rebuttal? Yes, I would. Thank you, Your Honor. All right. Thank you very much, Mr. Sopcich. We'll next hear from Mr. Schenck for RLI. May it please the Court. Counsel, Todd Schenck for the Eppley RLI Insurance Company. As Judge Hamilton kind of stole my thunder, I was going to lead with the quote out of AIG's brief, that absent policy language to the contrary, deductibles erode the policy limits, and self-insured retentions do not. That's not only a quotation out of AIG's brief, though. That's also the rule that was applied by the district court, and with good reason. There's a lot of case law that the district court cited recognizing that that is an industry practice, that that is an accepted legal principle. When you see the word deductible, you start with the assumption, or from the position, that it will erode limits. Can I ask a question about that, just to educate me a little bit? I know you can bring in a whole wheelbarrow of treatises that say that, and pile up a whole bunch of cases and all that. Is that because, does that reflect an understanding that comes out of language and policies? Like, in other words, policies describe how deductibles work, and people write treatises that mirror that understanding. Or do you say, no, no, no, it's not because deductibles or policies explain deductibles. It's just because in this industry, everyone knows what deductible means. I don't think I can give you a categorical blanket answer. Some policies will certainly say a deductible erodes the limits. Some policies will say the self-insured retention does not. But many policies are silent. And then you just go back to the industry understanding, and there's evidence in the record of that industry understanding. The only reason that's odd to me is because this policy takes pains to define everything. It even defines the word you and we, right? But it's silent on deductible. And I think that's because it's such a well-understood and accepted industry principle. And as between NuPrime and RLI and NuPrime's broker, Cunningham and Butler, they all understood what a deductible is and how it works. They all understood what a self-insured retention is and how it works. And the affidavits from RLI's underwriter and from NuPrime's insurance manager and from NuPrime's broker testify to the fact that they had that understanding. Has NuPrime ever contested that? Did they contest it in the underlying litigation? I know here there's evidence that was submitted at the summary judgment, but in the underlying state court litigation? They never contested it. And, in fact, there's evidence in the record that NuPrime's brokers, on behalf of NuPrime, went to AIG and said we can never have this happen again where we're at a mediation and AIG takes a position that they attach excess of $7.5 million. We need to get this clarified now so that it doesn't happen again, as it did at the time of trying to settle the New Mexico lawsuit. Is it correct that after this controversy has arisen, RLI has amended the policy to clarify the point? There's no evidence in the record as to why the amendment was made. All we can say is in the record there's an amendment. The current policies are clearer than this one. I wouldn't stipulate that they're clear, but I'll just say that they are amended. More explicit. How about that? On this point. There's a more explicit point, yes. Okay. A quick background question. I understand the word aggregate. I understand the word deductible. I don't understand the word corridor in the phrase aggregate corridor deductible. That's a very good point, and that gets to one of the points that AIG tries to make, that deductibles are not compatible with or they're anathema to an excess policy. That's simply not true. There is no precedent anywhere that says you can't have that. Could you answer my question? Yes. The corridor deductible talks about once you're above $1, you're in a loss corridor here above the $3 million self-insured retention. Now you have the next layer, a loss corridor where that deductible applies. So that's what a corridor really means. It's applicable to an excess level. Like a level? Yes. Why they use corridor, I'm not sure, but that's what is being indicated there, that we have a level above the primary policy where we're going to have a deductible obligation. And there's no reason why you can't have a deductible applicable to an excess policy. It's just a matter of risk transfer that's for the parties to decide how they'd like to split up that $5 million level of coverage. Do you agree with what the district court found, that the language about one or more losses, which would be factually impossible to satisfy here, the one loss, that that's boilerplate language? Or do you have a different argument for that language? Boilerplate, I think, is a fair characterization of the language. By the time of the policy at issue here, that language was drafted in 2011 when New Prime first became an insured with RLI. It was drafted by the parties. But by 2014, when this policy went into effect, it had been in place for several years, and it was really just boilerplate. Now, in 2013, the aggregate corridor deductible was raised from $2 million to $2.5 million. So I can't argue with AIG's math that you can't exhaust $2.5 million in an aggregate deductible on a single claim if the deductible is limited to $2 million per occurrence, which it is. So the language should have been changed from one or more claims to two or more claims is AIG's argument. That may be true, but that doesn't prove what they're suggesting, that therefore the deductible does not erode limits. That language, that one or more claims language, the purpose of it was simply to say, New Prime, you're responsible for costs until you have exhausted the aggregate corridor deductible, they said, on one or more claims. But that's the purpose of it. You, New Prime, are responsible for costs, not RLI, until the deductible is exhausted. The purpose of that language was not to calculate the minimum number of losses that it takes to exhaust the deductible. That was really just an ancillary point in that language. So the fact that they may have neglected to change the word one to two can't overcome the fact that this is a deductible, that the word deductible was used separately from the term self-insured retention in the policy. The parties understood what those terms meant, and they meant what they said. You're right at that level, I think. There's no question that it's characterized that way, and there's some distinction in the text of the policy. But it's also true, is it not, that there's no provision that speaks, that says that the ACD erodes policy, erodes the XX policy. I mean, you can't say, go look at X provision. So we're kind of dancing around it to get there, but, right? I agree that you can't look at any point in the policy that says  but there are countless examples of deductibles and insurance policies that do erode the limit, but it's not expressly stated, because that's what the concept of a deductible means. So the concept of deductible is like an implied, unwritten, silent term in a policy like this, because the whole world understands it. I don't think it's silent. The word deductible is in the policy. That means it's deducted from the limit. I think that's what that word means. So to say it's silent, I wouldn't agree with that. Well, it's not defined, right? Correct. Even though every other word seemingly used in the policy is defined. The term deductible is not defined, but the policy says in the insuring agreement there's a $2 million aggregate limit or a $2 million per occurrence limit excess of the self-insured retention, not excess of the aggregate corridor deductible. AIG suggests that the aggregate corridor deductible is a second self-insured retention, and therefore the $2 million limit of insurance sits above both. Is this the way things work with, like, auto home policies? If I in my auto policy have a $500 deductible, I shouldn't be able to expect anything defining how that deductible works, because it's just understood. That's the plain meaning. The whole world knows how deductibles work. I would think, no, no, no. Why would an insurance company leave it to chance like that? Why wouldn't it say, look, policyholder, here's the way this works. You pay the first $500, and then your policy kicks in, but that $500 is netted against the policy limit. I just expect to see a sentence like that somewhere. Perhaps in a stock consumer policy, like you're mentioning, your hypothetical with a auto policy or something like that, you might expect to see that language in the policy. Here, however, we have two sophisticated commercial entities drafting the policy together. They understood, as the affidavits testify to, what the word deductible meant. They didn't need to define it. And if there's any uncertainty left in the policy language in the court's mind, then you look at the extrinsic evidence, which is uniformly consistent that ACD payments erode the limit. Mr. Schenck, let me ask you. I want to make sure that I understand something. You've argued that erosion of the policy limits was needed to give new crime the ability to control the claims, investigations, and settlement, and so on. I think that's how I've understood your argument. Why is that, and why is AIG's argument inconsistent with that defense endorsement? In 2011, when the relationship started, new crime wanted the right to control its own defense when it's its own money. So they drafted the defense endorsement, as Your Honor referenced, to say that if RLI has no potential responsibility for a loss, new crime controls settlement. AIG, and so the only way RLI can have no potential responsibility for a loss is if ACD payments erode the limit. So, for example, the first occurrence in the policy period here was the New Mexico lawsuit. There was $2.5 million left on the aggregate court or deductible. New crime still had to pay $2 million on that occurrence on deductible payments. Those reduced the $2 million limit to zero because they're deducted from the limit, and therefore RLI had no potential responsibility for that claim. For the next claim in the policy period, there's only $500,000 left in the aggregate court or deductible to reduce the $2 million limit to $1.5 million. On that second claim, RLI does have potential responsibility and could control settlement itself. New crime lost control of that second settlement because RLI had potential responsibility. AIG cannot square its position with potential responsibility language other than to rewrite it to say, well, that's just practical exposure, you know, reasonably likely to have exposure. But the parties didn't want a subjective standard here. That's why they said potential responsibility. They did not say new crime shall control settlement when it's not reasonably likely that RLI will have exposure. So you can't square their position with the policy as it's drafted. AIG's reply brief on this point says, well, the first paragraph of the defense endorsement gives RLI control of settlement on all claims. Well, that renders the third paragraph that we're talking about with the language potential responsibility illusory. And if you go back and look at the basic form, section 2B is called defense. That section was amended by this defense endorsement. If you look at the defense endorsement, the first two paragraphs come right from the basic form verbatim. The third paragraph is the new language that's added to that defense endorsement. Therefore, you know, under a legal principle that endorsements should trump the policy, basic form, that third paragraph is more important and should trump anything in that first paragraph. And the third paragraph is where you find the potential responsibility language. I'd like to ask you as a practical matter, in this horrible tragedy in New Mexico in which this couple was killed, you've got multiple layers of insurance. Who's in control of settling that kind of a case? In that case, RLI had no control. Right. New Prime had control within the $5 million layer, but when the settlement goes above that, it falls to Lexington and then National Union to also kick in, correct? So everybody just has to agree in that situation? Yes. Or the excess don't have the power to dictate, for example, that somebody at a lower level has to kick in? As within the first $5 million, it's all New Prime's decision making. That was all New Prime in that case, yes. But once the settlement exposure or the numbers go above that, then the terms of the Lexington and National Union policies control, and you'd have to look at those policies to see who has control over making an offer of, say, $8 million or $10 million. Thank you. Just one last point I'd like to make. One of the points by AIG where they're saying you should treat this deductible as a self-insured retention because it bears all the hallmarks of a self-insured retention, first of all, I think, as you noted, the fact that we don't have a duty to defend isn't because the deductible is a self-insured retention. It's because we're an excess indemnity carrier above an undisputed $3 million per current self-insured retention. No excess indemnity carrier, whether they have a deductible or not, has a duty to defend when there's a $3 million self-insured retention below it. We talked about deductibles being inconsistent. They argue deductibles are inconsistent with excess coverage. I'll just refer you to the secondary source, Ostringer Newman's handbook, which is cited in the September 11th case, footnote 7. AIG's brief purports to cite to that footnote and purports to quote to it, but without noting it they only say citations omitted. They've omitted a sentence by the court. And the sentence which is highlighted in our brief in our opposition at page 16 is as follows.  The insurer is then liable for amounts exceeding the retention, less any agreed deductible. That sentence was by the court in the September 11th case, citing the Ostringer Newman secondary source, but is omitted from AIG's brief and highlighted in ours. I think that undercuts their argument almost completely. If there's no more questions, I thank the court. Okay, thank you, Mr. Schenck. Rebuttal, Mr. Sobczak. Thank you, Your Honors. First, with respect to the brief and the citation, the case, it is, any omission was, it just wasn't relevant at the last sentence, so. Once an SIR is satisfied, the insurer is then liable for amounts exceeding the retention, less any agreed deductible. You don't think that's relevant? Well, there's other cases that certainly have statements distinct from that. The Burggraf case, there's a number of them. So any omission, certainly AIG or Lexington was not attempting to mislead the court. I just want to make that clear. With respect to our allies' arguments, you know, I think it's important that this court, this court has repeatedly stated that, you know, extrinsic evidence is certainly admissible to prove an ambiguous contract. But there is a strong policy goal for the certainty of contracts. I'm sorry, sir. You're trying to tell us you weren't trying to mislead us with this? There's not even an ellipsis between the sentences. I am absolutely telling you I'm not trying to mislead you with that, sir. Somebody check this brief? Yes, I checked it. Against the original? I did. And you thought it was okay to just not indicate the omission and the one that hurts your case? Yes, Your Honor. Interesting way to practice law. I'm taken aback at this point, Your Honor. I certainly would apologize for any error. It was not intentional, and that's all I can say. So, Your Honors, I would also like to point out that with respect to the merits that, you know, the key policy or the key provisions of the RLI policy with respect to how the ACB operates, those are unambiguous. It's clear that RLI can or, I'm sorry, that New Prime controls the defense, that RLI, I'm sorry, that New Prime controls pre-suit investigation, that New Prime pays the claims. That's quite clear. Unless Your Honors have any questions, I would just like to make one quick point, and that Your Honors have pointed out that RLI, I would just like to point out that RLI did not, as Judge Scudder pointed out, leave it to chance that, how this would work, because it clearly provided that this was a self-insured retention and not a deductible. Thank you, counsel. Thanks to all counsel. The case is taken under advisement.